NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0113n.06

No. 16-5651

| | | |
|---|---|---|
| UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT | | **FILED** Feb 17, 2017 DEBORAH S. HUNT, Clerk |

JAMES HACKNEY,

    Plaintiff-Appellant,

v.

ALLMED HEALTHCARE MANAGEMENT INC.,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

---

**BEFORE:** McKEAGUE, KETHLEDGE, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** James Hackney was covered by a disability policy through his employer and, due to his declining medical condition, filed a claim for long-term disability insurance benefits. The insurance carrier sent his medical records to a third-party reviewer, AllMed, for a medical opinion on whether Hackney's records supported a finding of total disability. Upon receiving AllMed's opinion that Hackney was not disabled, the insurance carrier denied his claim. Hackney subsequently brought this state-law claim against AllMed, which removed the case to federal court alleging complete preemption under the Employee Retirement Income Security Act of 1974 (ERISA). Hackney appeals the district court's denial of his motion to remand the case to state court and its grant of AllMed's motion to dismiss his case. Applying our precedent to the facts in this record, we **AFFIRM**.

## I.   BACKGROUND

Hackney worked in Kentucky as an associate account manager, and then director of marketing, for Vascular Solutions, Inc. (VSI), a Minnesota-based company. *Hackney v. Lincoln Nat'l Life Ins. Co.*, 657 F.App'x 563, 566 (6th Cir. 2016). Through his employment, Hackney was covered by a group long-term disability insurance policy that was financed by VSI and administered by Lincoln National Life Insurance Company (Lincoln). *Id.* at 567. In October 2010, Hackney's medical condition of hypoparathyroidism made it so he could no longer work. *Id.* He took medical leave and applied to Lincoln for benefits provided by his employer-furnished insurance policy. Lincoln engaged AllMed, an Oregon-based third-party record reviewer, to evaluate Hackney's medical documents and provide an opinion on whether the medical evidence supported Hackney's claim of complete disability. AllMed opined that Hackney was able to work:

> Based on a review of the additional medical records, the claimant does not appear to have any impairments that would translate into restrictions or limitations . . . The restrictions and limitations that were placed upon the claimant's work activities by [Hackney's treating physicians] are not consistent with the additional medical records.

(R. 1-1, PageID 12).

AllMed's opinion was drafted and revised by its agents Robert J. Cooper and Skip Freedman. Neither AllMed nor its agents were licensed to practice medicine in Kentucky at the time they reviewed Hackney's records and rendered their opinion on Hackney's medical status. Based in part on AllMed's opinion, Hackney's claim for disability benefits was denied. Due to the same medical condition, however, Hackney was granted disability benefits through a separate private insurance plan. Additionally, the Social Security Administration determined Hackney to be totally and permanently disabled effective October 2010. *Hackney*, 657 F.App'x at 568.

Hackney filed a lawsuit, separate from this one, against VSI and Lincoln in Kentucky state court that included claims for breach of contract, breach of the duty of good faith and fair dealing, and the unlicensed practice of medicine in connection with the denial of his application for short-term disability benefits under his employer-sponsored plan. *Id.* at 569. The unlicensed practice claim alleged violation of Kentucky law by "employing unlicensed, out-of-state nurses to review his application for benefits." *Id.* at 579. The case was removed to federal court on the basis of diversity jurisdiction, where summary judgment was granted to the defendants on all claims. On appeal, we reversed and remanded to the finder of fact on the claims for breach of contract and the duty of good faith and fair dealing. *Id.* We affirmed on the unlicensed practice of medicine claim, finding that the nurses' review of Hackney's file did not fall within the state statute governing the practice of medicine. *Id.*

Hackney filed this lawsuit against AllMed in state court alleging a state-law violation relating to AllMed's "actions in rendering an unlicensed medical opinion" concerning Hackney. The medical opinion was requested by Lincoln, who was reviewing Hackney's request for long-term disability benefits under the ERISA-based insurance plan that it administered for VSI employees. AllMed removed the case to federal court based on complete preemption under ERISA. The trial court denied Hackney's motion to remand the case to state court and granted AllMed's motion to dismiss under Rule 12(b)(6). Hackney timely appealed the final judgment against him.

## II.     ANALYSIS

### A.     Standard of Review

We review de novo a district court's decision involving legal questions of subject matter jurisdiction. *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016). Factual determinations

regarding jurisdictional matters are reviewed for clear error. *Id*. A district court's ruling on a

motion to dismiss a claim is reviewed de novo. *Id*. at 883.

**B.      Complete Preemption of State-Law Claims under ERISA**

The Supreme Court has articulated a two-prong test to determine whether a claim is

completely preempted under § 1132(a) of ERISA. *Aetna Health Inc. v. Davila*, 542 U.S. 200,

210 (2004). A claim is completely preempted when it satisfies both prongs of the following test:

> (1) the plaintiff complains about the denial of benefits to which he is entitled only
> because of the terms of an ERISA-regulated employee benefit plan; and (2) the
> plaintiff does not allege the violation of any legal duty (state or federal)
> independent of ERISA or the plan terms.

*Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013) (quoting *Davila*,

542 U.S. at 210). The state-law claims in *Davila* involved insurance plans failing to exercise

ordinary care when the plans denied coverage for certain medical procedures. *Davila*, 542 U.S.

at 204–05. Those claims involved "pure eligibility decisions" and were preempted by ERISA.

*Id*. at 221.

### 1.      Claims Based on the Terms of an ERISA-Regulated Plan

To determine whether a claim satisfies the first prong of the *Davila* test, courts look

beyond the "label placed on a state law claim" and instead ask "whether in essence such a claim

is for the recovery of an ERISA benefit plan." *Hogan*, 823 F.3d at 880 (quoting *Peters v.

Lincoln Elec. Co*., 285 F.3d 456, 469 (6th Cir. 2002)). A claim "likely falls within the scope of

§ 1132 when the only action complained of is a refusal to provide benefits under an ERISA plan

and the only relationship between the plaintiff and defendant is based on the plan." *Id*. (quoting

*Davila*, 542 U.S. at 211).

The plaintiff in *Hogan*—represented by the same counsel as in this case—brought

negligence per se claims against two medical professionals who were employees of the insurance

company that administered a plan governed by ERISA. *Id*. at 877. The medical professionals were allegedly negligent because they were not licensed to practice medicine or psychology in the Commonwealth of Kentucky at the time they reviewed plaintiff's records and rendered opinions that were relied on by the insurance company. *Id*. In *Hogan,* we held that the claim of negligence per se against the plan's medical professionals involved "a relationship created solely by the ERISA plan and an incident that is subsumed entirely within the denial of benefits under an ERISA plan." *Id*. at 881. The claim was completely preempted by ERISA because the negligence it alleged was "the negligent processing and denial of [Hogan's] claim for ERISA benefits." *Id*.

As both parties concede, the claim in this case shares many parallels with the claims in *Hogan*. The alleged negligence of medical professionals in both cases involves the same Kentucky licensing law: Ky. Rev. Stat. § 311.560. *Id*. at 878. As in this case, the medical professional defendants in *Hogan* rendered opinions that were considered by the plan as it decided to deny benefits. *Id*. at 877. The nurses in *Hogan*, however, were straight employees of the plan administrator, whereas here they are employees of an independent contractor retained by the plan. This factual distinction does not matter for the first prong of *Davila* because there the focus is on the nature of the claim itself and whether it is "about the denial of ERISA-plan benefits," not on the formal title of the individuals conducting the medical review. *See id*. at 880.

Moreover, when Hogan argued—exactly as Hackney does here—that the first prong of the *Davila* test was not satisfied because the nurses reviewing her file were not proper defendants for an ERISA action and therefore Hogan could not have brought her claim against them under ERISA, the court rejected her argument as misunderstanding our complete preemption case law.

*Hogan*, 823 F.3d at 879–80. The court emphasized that prong one of *Davila* hinges not on who was sued, but on "whether in essence such a claim is for the recovery of an ERSIA plan benefit." *Id.* at 880.

AllMed's "conduct was indisputably part of the process used to assess a participant's claim for a benefit payment under the plan, making the negligence claim an alternative enforcement mechanism to ERISA's civil enforcement provisions." *Id.* (quoting *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 6 (1st Cir. 1999)). As in *Hogan*, the damages in this case "arise from the ultimate denial of disability benefits." *Id.* at 881; *see, e.g.,* R. 1-1, PID 12 (Hackney's complaint states that "[a]s a direct result of AllMed's medical opinions . . . [Lincoln] denied his claim for disability income benefits."). Therefore, the first prong of the *Davila* test for complete preemption is satisfied.

### 2. Legal Duty Independent of ERISA

The second prong of the *Davila* test instructs us to ask whether the plaintiff alleges the violation of an independent legal duty. 542 U.S. at 210. A state-law tort is independent of ERISA when the duty conferred was "not derived from, or conditioned upon, the terms of" the plan and there is no "need[] to interpret the plan to determine whether that duty exists." *Gardner*, 715 F.3d at 614. In *Gardner*, we held that a claim for tortious interference with a plaintiff's right to receive benefits under an ERISA plan was not preempted when the claim did not require the interpretation of any plan terms. *Id.* at 615.

Hackney argues that the claim here does not require the interpretation of any terms in the plan agreement so the duty is independent. AllMed argues that the independent duty inquiry should end with the determination that the relationship between it and Hackney arose solely from an ERISA plan. While *Gardner* demonstrates that an independent duty may exist even when an ERISA plan is the basis for the relationship between the parties, *see Gardner*, 715 F.3d at 615,

there is no such duty here. In Hackney's case against VSI and Lincoln, we determined that reviewing medical records does not by itself constitute the practice of medicine. *Hackney*, 657 F.App'x. at 579. In *Milby v. MCMC LLC*, 844 F.3d 605, 612 (6th Cir. 2016), another recent case involving a negligence per se claim based on the same Kentucky licensing law, we held that "it follows that the licensing law does not create a duty that flows from those professionals to claimants." *Id*.

The allegations in Hackney's complaint implicitly rely on ERISA to establish the duty required for his negligence claim. The claim here therefore satisfies the second prong of the *Davila* test. Because both of the prongs of the *Davila* test are met, the state-law negligence claim is completely preempted by ERISA. We affirm the district court's denial of Hackney's motion to have the case remanded to state court.

###    C.    Dismissal under Rule 12(b)(6)

The district court found that AllMed was not a proper defendant for an ERISA claim and dismissed the complaint. In *Hogan*, we affirmed dismissal of similar claims against nurses employed by a plan administrator in part because "the proper defendant in an ERISA action concerning benefits is the plan administrator." 823 F.3d at 884 (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 522 (6th Cir. 2010)). The appropriate avenue for Hackney's potential relief on these matters is in the previously filed case against the plan administrator. We therefore affirm the district court's grant of AllMed's motion to dismiss the claim under Rule 12(b)(6).

###    III.    CONCLUSION

The state-law claim in this case is completely preempted by ERISA. The claim is in essence about the denial of benefits under an ERISA plan and the defendant does not owe an

independent duty to the plaintiff under the Kentucky medical licensing statute. Dismissal of the claim was proper. The district court's judgment is therefore **AFFIRMED**.

**McKEAGUE, Circuit Judge, concurring.** I agree with the court's opinion, but write separately because my understanding of ERISA complete preemption leads me to conclude that even if Kentucky's medical licensing statute had imposed a duty on AllMed, this duty would not have "arise[n] independently of ERISA or the plan terms" since it is inextricably intertwined with the benefits review process; thus, Hackney's claim would remain completely preempted under 29 U.S.C. § 1132(a)(1)(B), state law notwithstanding. *See Aetna Health v. Davila*, 542 U.S. 200, 212 (2004). In my view, the lead opinion mistakenly uses the lack of a duty under Kentucky law as a foothold for the conclusion that AllMed owed no independent duty to Hackney. *See* Maj. Op. at 7. Instead, the focus under prong two of *Davila* should be on the state law's connection to the benefits review process itself.

"Whether a duty is 'independent' of an ERISA plan, for purposes of the *Davila* rule, does not depend merely on whether the duty nominally arises from a source other than the plan's terms," such as under a state statute. *Gardner v. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013); *see also Hogan v. Jacobson*, 823 F.3d 872, 882 (6th Cir. 2016). Instead, if a state law claim "derives entirely from the particular rights and obligations established by the benefit plans," a duty is not independent. *Davila*, 542 U.S. at 213. This court's recent decision in *Hogan*—which found no independent legal duty irrespective of Kentucky law on nearly identical facts—reiterates that it is the state law's relationship to ERISA that is key. The *Hogan* court found that Hogan's unlicensed practice of medicine claim did not arise independent of ERISA because "the relationship between the parties arose in the context of a benefits-review process under an ERISA plan, and that Hogan's claimed damages flow[ed] entirely from the denial of her request for benefits." *Hogan*, 823 F.3d at 882.

The same is true here, where Hackney's claim against AllMed exists solely because Lincoln retained AllMed for the purpose of determining whether Hackney was entitled to benefits under the terms of his ERISA-regulated plan. The fact that the medical reviewers in *Hogan* were employees of the plan administrator, while AllMed was hired by Lincoln as an independent contractor, should not alter the analysis. Kentucky law presumably imposes the same duty on all medical reviewers—employees and independent contractors alike—so I see no reason why we should deviate from the analysis in *Hogan*, especially given that the reviewers were performing the same duties in both cases. Yet, the lead opinion does not mention *Hogan* and seems to imply that if reviewing medical files did happen to constitute the practice of medicine in Kentucky, Hackney's state law claim would be allowed to proceed. But this seems contrary to *Davila* and *Hogan* given the claim's direct ties to benefits review.

I am not suggesting that any ERISA-based relationship between two parties is sufficient to preclude a duty from ever being independent, no matter how tenuous. *See Milby v. MCMC, LLC*, 844 F.3d 605, 611 (6th Cir. 2016). *Gardner* illustrates otherwise, where we held that the duty of corporate executives not to interfere with an ERISA-regulated employee benefit plan while negotiating changes of ownership arose independent of ERISA. *Gardner*, 715 F.3d at 613–14. But, Hackney's claim is "distinct from those . . . in which a truly independent state-law tort claim is brought between parties that happen also to have an ERISA-based relationship." *Hogan*, 823 F.3d at 883 (citing *Gardner* as one such distinguishable case).

Here, just like in *Hogan*, because "any duty that [AllMed] owed [Hackney] arose *solely because of and within the context of benefits review* required by the plan," *id.* (emphasis added), ERISA's "extraordinary pre-emptive power" bars the state law claim, *Davila*, 542 U.S. at 209. Prong two of *Davila* involves an inherently comparative analysis between the state law claim and

ERISA.  Only if a court determines that the state law is distinct does it seem necessary to then ask whether that law creates a duty flowing to the specific defendants.  Here, since Hackney's unlicensed practice of medicine claim does not arise independent of ERISA, it does not matter whether AllMed owed a duty under the state law or not.  Even the lead opinion seems to recognize this by stating that "[t]he allegations in Hackney's complaint implicitly rely on ERISA to establish the duty required for his negligence claim."  *See* Maj. Op. at 7.  It is this relationship between Hackney's state law claim and the benefits review process itself—not interpretation of Kentucky law—that, in my opinion, should drive the conclusion that AllMed owed no legal duty independent of ERISA.